IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KEVIN RANDALL, on behalf of himself and all others similar situated,<br><br>　　Plaintiff,<br><br>　　v.<br><br>BURKE & HERBERT<br>BANK & TRUST COMPANY,<br><br>　　Defendant. | CIVIL ACTION NO. 1:20cv00183-TSE-MSN |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

　　The class-action complaint should be dismissed for three separate reasons. First, the Court lacks subject matter jurisdiction because the dispute does not involve aggregated claims of at least five million dollars. Second, even if the Court had jurisdiction, it would be required to decline to exercise it under the home-state controversy exception as Burke & Herbert and more than two-thirds of the proposed class are citizens of Virginia. Third, the Complaint fails to allege facts, as opposed to conclusions, to state a plausible claim that Burke & Herbert breached its contractual agreement with its accountholders.

　　Plaintiff Kevin Randall alleges that Burke & Herbert imposed overdraft fees for certain debit card transactions contrary to its written overdraft policy. Burke & Herbert denies that. But at this stage Burke & Herbert must limit itself to addressing whether (1) the Court has and may exercise jurisdiction, and (2) whether the factual allegations state a plausible claim. On both fronts, the Complaint is long on conclusions and short on specifics. In general, the Complaint asserts in purely conclusory fashion that there is at least one class member who is not a Virginia citizen and that the aggregate claims of the putative class exceed $5 million. The Complaint

makes these assertions even though it identifies only one class member, Randall, who admits he is a resident of Virginia, and specifically identifies only a single instance where Burke & Herbert charged Randall an overdraft fee of $35. Based on these few allegations, Randall asks the Court to allow this action to proceed on behalf of a class described as those account holders who were charged an overdraft fee for a debit transaction that resulted in insufficient funds when presented for payment even though the account had sufficient funds at the time the transaction was authorized at the point of sale. Plaintiff gives this subset of debit card transactions the self-created moniker of APPSN transactions, which stands for what plaintiff asserts are "authorized positive, purportedly settle negative" transactions. Randall's Complaint falls short, as this Court lacks subject matter jurisdiction over this action and he has failed to state a claim upon which relief can be granted.

## FACTS AND ALLEGATIONS

**A.     Facts and allegations addressing subject matter jurisdiction and whether the Court should decline to exercise jurisdiction**.

Plaintiff alleges that Burke & Herbert is a citizen of Virginia. *See Compl. ¶¶* 10-11. He likewise alleges that he is a resident of Virginia and that he is "informed" that at least one class member is a non-citizen of Virginia. *See Compl. ¶¶* 9, 11. Randall alleges that he was subjected to overdraft fees and identifies one $35.00 fee on one transaction. *See Compl. ¶ 66.* He alleges in a conclusory way that the sum of aggregate damages equal $5 million. *See Compl. ¶ 7.* Accordingly, under Randall's allegations, the plaintiffs would need to establish approximately 143,000 transactions in which an overdraft fee was improperly imposed to reach the minimum aggregate damages. There are no facts alleged to give even an inference of that magnitude.

Burke & Herbert reviewed its electronic records to provide the Court with information about the potential class and claims at issue. In extracting this information, Burke & Herbert

utilized a larger set of customers and transactions than those pled as the putative class and putative transactions at issue. This approach is necessary because the plaintiff's self-designated APPSN transactions is not a type of transaction Burke & Herbert recognizes. Accordingly, it has used two larger data sets: all debit transactions that resulted in an account having insufficient funds and customers who were charged an overdraft fee for a debit transaction. All so-called APPSN transactions and customers within the two larger data sets who might have been charged a fee for such a transaction are necessarily included in these larger sets.

Burke & Herbert first used daily reports to capture all debit card transactions that resulted in an account having insufficient funds; i.e., an account balance below zero. *See Declaration of John Gallo, ¶ 4, attached as* Exhibit 1. For the five-year time period at issue, a total of 36,609 debit card transactions resulted in a consumer account having insufficient funds. *Gallo Decl. ¶ 4.* Even if every one of these transactions incurred an overdraft fee, it would result in only approximately $1.3 million in total fees. Because the daily reports do not show whether Burke & Herbert charged an overdraft fee for the specific transactions, or if so, how much, Burke & Herbert undertook an examination of another data set that contains data on the fees that were charged on particular transactions. In undertaking this second review and analysis, Burke & Herbert had information and data for transactions that occurred on 78.8% of the days in the 5 years between February 20, 2015 and February 20, 2020.

The data from this second data set shows that overdraft fees were charged on only 1,973 of the debit card transactions that resulted in insufficient funds in the customers' account.[1] *Gallo*

---

[1] There are multiple reasons for the significant discrepancy between the number of transactions for which there were insufficient funds to pay and those for which an overdraft fee was imposed. For example, under the schedule of fees, Burke & Herbert does not charge an overdraft fee for a transaction that does not overdraw the account by more than $10.00. So those transactions which overdrew the account by less than $10.00 had no fee imposed. Likewise, customers can utilize a Burke & Herbert overdraft protection service allowing funds to be transferred from another account.

*Decl.* ¶ 8. This resulted in a total of $67,107 in overdraft fees for those transactions. *Id.* Stated generally, the bank's records reflect over the five-year period an average of just $1,400 per month in *total* overdraft fees from all debit card transactions by consumer accounts. *Gallo Decl.* ¶ 9. Using this average indicates total overdraft fees of approximately $84,000 for the period in question.

Using this same second data set, Burke & Herbert has identified a total of 1,164 unique customers with accounts that had a debit card transaction that incurred an overdraft fee. Thus, these unique customers necessarily would include all potential class members for approximately 80% of the alleged class period. Burke & Herbert then reviewed the primary customer address for each of the 1,164 personal customers. *Gallo Decl.* ¶ 12. From this set, 1,019 of the 1,164 (or 87.5%) had a primary customer account address located in the Commonwealth of Virginia. *Id.* Of the 1,164 customers, 858 still had an account open with Burke & Herbert on February 20, 2020, the day the Complaint was filed. Of those 858 customers with open accounts, 742—or 86.5%—likewise have a primary customer address in the Commonwealth of Virginia. *Gallo Decl.* ¶ 13. Based on a review of month-end datasets available for December 2015 and March 2016 through February 20, 2020, 97% (or 722) of those 742 customers have had a primary customer address only in the Commonwealth of Virginia. *Id.* And of the 306 that no longer had an open account with Burke & Herbert, 249 had a last known address in the Commonwealth of Virginia. *Gallo Decl.* ¶ 14.

**B.     Allegations regarding Randall's debit card use and the alleged breach of contract.**

Randall relies extensively on conclusory allegations as a substitute for facts regarding Burke & Herbert's alleged breach of its agreement. The description of the purported misuse of the debit card process pleads inconsistent and contradictory assertions, and Randall includes allegations about Consumer Financial Protection Bureau observations about overdraft actions

taken by other banks with no factual allegations that Burke & Herbert ever engaged in the conduct the CFPB criticized.

Randall pleads that he has a personal account with Burke & Herbert, and the customer relationship is governed by a schedule of fees and a deposit account agreement, both of which are attached as exhibits to the Complaint. *Compl.* ¶ 35, Ex. A, B. The schedule of fees provides that an overdraft fee "applies to transactions . . . that result in a negative account balance." *Compl.* Ex. A, at 1. The deposit account agreement provides that if the "account lacks sufficient funds to pay a check, pre-authorized transfer, or other debit activity presented for payment as determined by the available balance or actual balance in your account, [the bank] may (1) return the item, or (2) pay the item at our discretion." *Compl.* ¶ 36, Ex. B, § 14. *(emphasis added).* The agreement provides information as to how the available balance and actual balance is determined, and then provides that if an item is returned without the bank paying it, the bank "may charge you a non-sufficient funds fee." *Id*. If the bank does pay the item, then the customer "will be responsible to pay the overdrawn balance and an overdraft fee." *Id.* The same provision also discusses overdraft protection steps. The schedule of fees sets out potential fees for various transactions including overdraft fees, and likewise provides that Burke & Herbert will not charge an overdraft fee if the transaction at issue does not overdraw the account by more than ten dollars. *Compl.* Ex. A, at 1.

Randall also alleges the "mechanics" of a debit card transaction, and, broadly speaking, alleges that a debit card transaction is "authorized" at the initial point of sale when the merchant "swipes" the card. *Compl.* ¶ 29. He alleges that a "hold" may be placed on funds in the account and that the transaction is subsequently presented for "settling"; *i.e.*, payment. *Compl.* ¶¶ 30-33. Randall's Complaint is inconsistent in alleging the effect of the point-of-sale authorization,

5

alternately recognizing that the authorization results in a debit "hold" on the account, while at other times characterizing the "hold" on funds as funds being set aside or sequestered for use when the transaction is presented for payment. *Compare Compl.* ¶¶ 21, 31, 36, 40, 50 (asserting that the authorization results in a debit "hold") *with* ¶¶ 17, 19, 20, 22, 30, 38, 51, 56 (asserting that upon authorization the bank "sequesters" funds).

The unspoken gist of Randall's Complaint is that an authorized debit card transaction should never result in an overdraft fee. Randall claims that since funds are set aside upon authorization, the funds must be available to pay that particular transaction. Randall goes at lengths to allege that once funds are "set aside" they cannot result in an overdraft situation. *See Compl.* ¶¶ 38-49. He claims that the bank can unfairly charge an overdraft fee for a transaction that was authorized when the account had a positive balance sufficient to pay but is overdrawn when the transaction is formally presented for payment and "settled," a transaction he calls an APPSN transaction. *See Compl.* ¶¶ 56-57.

Randall alleges a single example of a so-called APPSN transaction. And even that example is pled in conclusory terms. Randall alleges that a $7.20 debit transaction had been authorized at a time when the account had sufficient funds to pay but he was later charged an overdraft fee when the transaction "settled" two days later when the account was overdrawn. *Compl.* ¶ 66.

## ARGUMENT

### I. The Court lacks subject matter jurisdiction under CAFA because the controversy does not involve aggregate damages of at least $5 million.

When subject matter jurisdiction is at issue on a 12(b)(1) challenge, the Court is not restricted to or bound by plaintiff's allegations; a court can review or accept evidence on the issue. MOORE'S FEDERAL PRACTICE: CIVIL § 12.30(3); *SunTrust Bank v. Village at Fair Oaks*

*Owner, LLC*, 766 F. Supp. 2d 686, 689 (E.D. Va. 2011) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("A trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment")); *Sys. Research & Applications Corp. v. Rhode & Schwartz Fed. Sys.*, *Inc.*, 840 F. Supp. 2d 935, 939 (E.D. Va. 2012) (Courts may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.").

Subject matter jurisdiction for a class action under CAFA requires that (1) one class member is of diverse citizenship from the defendant and (2) an amount in controversy with aggregate claims of at least $5 million. 28 U.S.C. § 1332(d)(2).

Here, Randall's allegations asserting jurisdiction are entirely perfunctory. Randall alleges that Burke & Herbert is a Virginia citizen and alleges in a conclusory fashion that at least one undisclosed member of the class is not a citizen of Virginia. *See Compl.* ¶ 11. A plaintiff must, of course, establish diversity. *See Strawn v. AT & T Mobility LLC,* 530 F.3d 293, 298 (4th Cir. 2008). The Court need not consider whether Randall's conclusory assertions suffice as the facts submitted by Burke & Herbert establish that the amount in controversy does not and cannot approach the statutory $5 million minimum.

As addressed above, Burke & Herbert has identified only 1,973 consumer debit transactions that resulted in overdraft fees for the five-year period at issue. Those transactions resulted in overdraft fees of $67,107; an average fee of $34. Even if every one of these transactions was a so-called APPSN transaction, the aggregate claims of the class members who were charged the fees fall millions short of the requisite amount in dispute to invoke this Court's jurisdiction to hear the class action.

In this vein, the fact that the data does not include transactions for a small portion of months of the five-year period should not alter the conclusion. Courts recognize the use of samples and statistical analysis in assessing jurisdictional facts. *See Ellis v. Montgomery County*, 267 F. Supp. 3d 510, 513, 520 (E.D. Pa. 2017); *Evans v. Enterprise Products Partners, LP*, __ F. Supp. 3d. __, 2019 WL 6789584, *4 (S.D. Tex. Dec. 12, 2019). Here, data regarding overdraft fees on particular transactions was unavailable for parts of 2015, 2017, and 2018. But the data was available for approximately 80% of the period at issue. And the average total fees on a month basis for the period was approximately $1,400. Adding that monthly average for the period of unavailable dates results in total fees in aggregate claims of just $84,000. And it strains reason for plaintiff to argue that the period comprising just 20% of the 5-year period could make up the approximately $4.9 million difference between the established amount of fees and the minimum jurisdictional amount.

Moreover, Burke & Herbert undertook an analysis of data in another data set to confirm these results. In that data set, which contains complete information for the five-year period, Burke & Herbert identified a total of 36,097 debit card transactions that resulted in the account having insufficient funds. Even if all the transactions resulted in an overdraft fee, it would still only result in a total of approximately $1.3 million—still far short of the five million dollar statutory requirement. Of course, when the aggregate claims amount is not met, the Court should dismiss the action. *See Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 917 (11th Cir. 2014); *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 53 (1st Cir. 2009); *Morgan v. Gay,* 471 F.3d 469, 477 (3rd Cir. 2006).[2]

---

[2] The procedural posture of all of these cases was a motion to remand. Thus, each court remanded the actions when the claims did not meet the minimum aggregate amount.

## II. Even if the Court had subject matter jurisdiction, it should decline to exercise jurisdiction under the home-state controversy exception.

In enacting CAFA, Congress significantly expanded the availability of a federal forum for class action lawsuits. But Congress also put limitations on the court's expanded jurisdiction, even in actions with aggregate claims above $5 million. First, district courts were given discretion to decline to exercise jurisdiction in certain instances. 28 U.S.C. § 1332(d)(3). Second, Congress mandated that district courts "shall decline to exercise" the jurisdiction granted by CAFA under two specific exceptions: the local controversy exception and the home-state controversy exception.

While both exceptions apply here, the Court need only consider the home-state exception to dismiss the action. Under the home-state controversy exception, federal courts "shall decline to exercise jurisdiction" in cases in which two-thirds or more of the proposed class and the primary defendant are citizens of the state in which the class action was originally filed. 28 U.S.C. § 1332(d)(4)(B).[3]

Procedurally, the CAFA exceptions to exercising jurisdiction do not challenge whether the Court in fact has jurisdiction. *Scott v. Cricket Communications, LLC*, 865 F.3d 189, n. 6 (4th Cir. 2017). While the Fourth Circuit has not considered the procedural mechanism, the Circuit Courts that have addressed the question hold that the issue does not present a Rule 12(b)(1) challenge and the issue is more closely akin to abstention. *See Hollinger v. Home State Mut. Ins. Co.,* 654 F.3d 564, 570 (5th Cir. 2011); *Graphic Communication Union v. CVS Caremark Corp.*, 636 F.3d 971, 973-4 (8th Cir. 2011). While courts have considered the issue pursuant to motions

---

[3] Under the local controversy exception, courts shall decline to exercise jurisdiction where: greater than two-thirds of the plaintiff class are citizens of the state in which the action is filed; at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims is a citizen of the state in which the action is filed; the principal injuries occurred in the state in which the action is filed, and there was no other class action filed in the preceding three years raising the same or similar allegations. *See* 28 U.S.C. § 1332(d)(4)(A).

to dismiss for failure to state a claim, the scope of the court's review and the materials that can be considered has not been fleshed out. This Court has previously noted, however, in addressing abstention that "[i]t is proper to consider matters outside the pleadings for purposes of a motion to dismiss that is based on (i) a challenge to the Court's subject matter jurisdiction; (ii) failure to join a necessary and indispensable party; or (iii) abstention. *Hazbun Escaf v. Rodriquez*, 191 F. Supp. 2d 685, n. 7 (E.D. Va. 2002) (*citing* FED. R. CIV. PRO. 12(b); *Hammond v. Clayton*, 83 F.3d 191, 192 (7th Cir.1996)).

The Complaint does not, of course, provide information as to the citizenship of the many class members. Instead, it alleges in conclusory fashion that because the Burke & Herbert website "makes clear that individuals who reside outside of Virginia are welcome to bank with Burke & Herbert…[,] numerous individuals who reside outside of Virginia do in fact bank with Burke & Herbert, and that many of those non-Virginia-resident members are members of the proposed class in this case." *Compl.* ¶ 11. But the website also makes clear that all Burke & Herbert locations are in Virginia and it holds itself out as a local bank. While the face of the Complaint may not establish this as a home-state controversy, Burke & Herbert has provided the information to allow the Court to evaluate even at this early stage whether it is required to decline to exercise its jurisdiction. As the issue is akin to abstention, the Court should be free to look outside the pleadings. But to the extent the Court has concerns as to whether it can consider evidence outside the pleadings of the potential class at this stage, the Court can convert this portion of the motion to a Rule 56 motion for summary judgment.

Burke & Herbert has identified from the data set that includes transactions from nearly 80% of the alleged five-year class period 1,164 unique customers that had a debit card transaction that incurred an overdraft fee. This set necessarily includes members of the proposed

class as the set of all debit transactions which incurred an overdraft fee includes those that incurred a fee for the subset of debit transactions Randall pleads. And from this set, 87.5% have an address in the Commonwealth of Virginia as their primary address. *Gallo Decl.* ¶ 12. Of the potential class members with open accounts as of the filing of the Complaint, 86.5% have a Virginia address. Of those customers, 97% have had a primary customer address located only within Virginia since then end of 2015 based on the available month-end data. *Gallo Decl.* ¶ 13 And of course, by definition, all maintain banking accounts in Virginia, as Burke & Herbert is a Virginia bank with all its locations within Virginia.

      This evidence establishes the applicability of the home-state exception and the Court should decline to exercise jurisdiction. In determining diversity jurisdiction, the state where someone establishes his domicile serves as his state of citizenship. Proving domicile generally requires a two-part showing: residency and an intent to remain. But proving a person's citizenship for establishing jurisdiction is different analytically and practically than considering the citizenship of a large class of individuals in the context of abstaining from the exercise of jurisdiction. *See Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383, 392 (6th Cir. 2016).

      Although the Fourth Circuit has not specifically addressed the issue of citizenship in the context of the CAFA exceptions, other Circuits and district courts have done so and recognize that an individual's residence in a state is a *prima facie* showing of domicile. *E.g. Mason*, 842 F.3d at 390; *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011); *Collins v. Golden Bell, LLC*, 2019 WL 2523571, *3 (N.D. Cal. June 19, 2019); *Jones v. EEG, INC.*, 2016 WL 1572901, *3 (E.D. Pa. Apr. 18, 2016). This *prima facie* showing coupled with some other evidence suggesting an intent to remain—such as holding bank accounts in the state—suffices.

11

*See Hollinger*, 654 F.3d at 571-74. (finding residency and registering a vehicle was sufficient to establish citizenship); *Kurovskaya v. Project O.H.R., Inc*., 251 F. Supp. 3d 699, 703 (S.D. N.Y. 2017) (finding residency coupled with employment in the state was sufficient to satisfy citizenship); *Richins v. Hofstra Univ.,* 908 F. Supp. 2d 358, 362-63 (E.D.N.Y. 2012) (finding address information and employment data from survey sufficient to establish citizenship).

This Court should follow the Sixth Circuit's approach. In *Mason,* the Sixth Circuit recognized that establishing citizenship for the purpose of CAFA exceptions is different than for establishing federal jurisdiction; CAFA exceptions are not jurisdictional. *Mason*, 842 F.3d at 392. And the fact that the court must address the citizenship of a large class requires a practical approach. Unlike for federal jurisdiction, the citizenship inquiry under the CAFA exceptions "should not be 'exceptionally difficult,' but instead 'practicable and reasonable.'" *Id*. (quoting *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013) and *Hollinger*, 654 F.3d at 572.). For that reason, the residency-domicile presumption fits well within the CAFA exception context. A rebuttable presumption of citizenship based on residency "avoids the exceptional difficulty of proving the citizenship of a class of over 100 individuals, given the nature and timing of the citizenship inquiry under the [home-state] controversy exception." *Id*. at 392-93.

Using this practical approach, Burke & Herbert's evidence meets its burden of showing that two-thirds or more of the members of the proposed class are citizens of Virginia. The Court can make the reasonable inference that the primary addresses supplied to Burke & Herbert represents these individuals state of residency. *See King v. Great American Chicken Corp. Inc*., 903 F.3d 875, 879 (9th Cir. 2018) ("[A]s a general proposition, district courts are permitted to make reasonable inferences from facts in evidence, and that is true in applying the . . .

exception[s] under CAFA, as well."). This conclusion is buttressed by the fact that this case involves class members who all allegedly have or had consumer bank accounts with Burke & Herbert, a Virginia bank with all its branches in Virginia. Even in the more stringent context of establishing diversity jurisdiction, residency plus bank accounts is looked to for determining domicile and thus citizenship. *See e.g. Phillips v. Packard*, 2007 WL 2471532, *2 (E.D. Va. Aug. 24, 2010).

If two-thirds of the class members are citizens of Virginia, the Court must decline to exercise jurisdiction. 28 U.S.C. § 1332 (d)(4)(B). Here the evidence shows approximately 87.5% of the potential class members are Virginia citizens. Even if some of the customers with Virginia residences were not citizens, there is nothing to suggest that there is any basis to infer or believe that the numbers could change so dramatically as to drop the percentage of Virginia citizens from almost 90% to less than 66%.

**III.     The Complaint fails to allege a plausible claim for breach of contract.**

While notice pleading suffices, a complaint must allege facts that establish a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007): *Doe v. Rector & Visitors of George Mason University*, 132 F. Supp. 3d 712, 719 (E.D. Va. 2015). Conclusory allegations are to be disregarded, and the complaint evaluated on the well-pled factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662. 678-84 (2009). And a mere recitation of the formulaic elements is likewise insufficient. *Id.* at 678; *Brach v. Conflict Kinetics Corporation*, 221 F. Supp. 3d 743, 747 (E.D. Va. 2016). Here, the state law breach of contract claim may be evaluated and dismissed based on the allegations and the terms of the deposit account agreement attached to the Complaint. *Zaklit v. Global Linguist Solutions, LLC*, 53 F. Supp. 3d 835, n. 6 (E.D. Va. 2014) (In considering a 12(b)(6) motion to dismiss, "courts may consider documents

attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

> **A. The Complaint fails to state a plausible claim because the express language of the disclosure allows the bank to impose an overdraft fee when an account is overdrawn at the time a transaction is presented for payment.**

Randall pleads a single count asserting breach of contract and breach of the implied duty of good faith and fair dealing. Whether considered separately or in conjunction with each other, the Complaint does not plead facts to establish a plausible claim.

Under the deposit account agreement, a customer agrees that they may be charged an overdraft fee "if [their] account lacks sufficient funds to pay a [debit activity] presented for payment . . . ." *Compl.* ¶ 36, Ex. B, § 14. And the contract is explicit: when an item is presented for payment, a fee may be charged if the account has insufficient funds to pay measured by either the actual or available account balance. Setting aside the conclusory assertions, the Complaint does not allege facts that show that Burke & Herbert ever charged a fee other than when an account lacked sufficient funds to pay an item at the time it was presented for payment.

Randall instead relies on the status of the account balance at the time a debit card transaction is authorized. But the authorization does not trigger an overdraft fee. An authorization is different from the actual presentation for payment.[4] And Randall recognizes the factual distinction between the authorization of a transaction and its subsequent presentation and payment. The Complaint recognizes that an authorized transaction will be submitted for payment

---

[4] If the bank authorizes the debit card transaction, then it pays the transaction regardless of whether the transaction would result in an overdraft and under Regulation E provisions the bank cannot—and Burke & Herbert does not—charge an overdraft fee unless the customer has opted in to an overdraft services plan applicable to the use of the debit card.

sometime after the authorization—indeed, the very definition of the so-called APPSN transaction depends on the distinction.

The account agreement is unambiguous: fees may be charged if the account has insufficient funds to pay a transaction presented for payment. Terms are given their ordinary meaning and applied as written. *Update, Inc. v. Samilow*, 311 F. Supp. 3d 784, 792 (E.D. Va. 2018); *Bartolomucci v. Federal Ins. Co.*, 289 Va. 361, 371 (2015). The term "presented for payment" can be given its ordinary meaning, and the Complaint recognizes that an item being presented for payment is different from a transaction being authorized.

The facts alleged do not establish that Burke & Herbert charged fees in any way not expressly addressed in the agreement. Thus, the Complaint fails to plead a plausible claim for breach of contract. *See Boone v. MB Financial Bank, N.A.*, 375 F. Supp. 3d 987, 992-94 (N.D. Ill. 2019) (finding that the plaintiff has failed to plead a breach of contract claim on the APPSN assertions because the governing documents are unambiguous and expressly permit the bank to charge these overdraft fees).

Attempting to confuse issues, the Complaint goes to lengths to quote from various CFPB and other publications about overdraft fees. However, those allegations and publications have no bearing to the claim here. For example, Randall does not allege that Burke & Herbert imposed fees in the manner criticized by the CFPB in a "Supervisory Highlights" report referenced in Randall's Complaint. In that report, the CFPB criticized certain banks for using a process that resulted in multiple overdraft fees. The CFPB addressed situations in which a hold on account funds placed for authorized transactions caused an account to be overdrawn when other transactions or checks were presented for payment and thus resulted in multiple overdraft fees when the preauthorized transaction was presented, even though the "hold" on funds triggered

15

other fees. *See Compl.* ¶¶ 24-25. But that is not what Randall alleges in his single example, and there are no allegations of fact that class members were subjected to that practice. The inclusion of CFPB criticism for a practice not at issue can be ignored for purposes of the motion.

### B. The Complaint fails to state a plausible claim for breach of good faith and fair dealing.

Randall's assertion that Burke & Herbert violated the duty of good faith and fair dealing likewise does not raise a plausible claim. Randall's assertion is that Burke & Herbert, among other things, "should not have used its discretion to charge [overdraft fees] on APPSN transactions." *Compl.* ¶ 84.

Under Virginia law, the duty of good faith and fair dealing "does not prevent a party from exercising its explicit contractual rights." *Virginia Vermiculite Ltd. v. W.R. Grace & Co.,* 156 F.3d 535, 542 (4th Cir. 1998). When a party has a clear contractual right, it may exercise that right. *Stoney Glen, LLC v. S. Bank & Trust Co.,* 944 F. Supp. 2d 460, 466 (E.D. Va. 2013); *Charles E. Brauer Co. v. Nations Bank*, 251 Va. 28, 35 (1996) (party does not breach duty of good faith by exercising rights given in contract). In applying the duty of good faith, if a party has a contractual right, the exercise of that right can breach the duty only if the party acted "dishonestly." If, on the other hand, the contract gives a party discretion in performing, the duty of good faith is breached only if the party acts unfairly in the exercise of that discretion. *See Stoney Glen*, 944 F. Supp. 2d at 466; see also *Brauer*, 251 Va. at 35 (explaining that dishonest, not arbitrary, exercise of contractual right, is shielded by the duty of good faith).

This Court rejects attempts to characterize a decision whether to exercise a contract right as a matter of contractual discretion. Thus, the implied covenant applies only where the accrual of a contract right depends on the exercise of contractual discretion rather than on objective facts. *Stony Glen*, 944 F. Supp. 2d at 469. Here, if a transaction resulted in insufficient funds, Burke &

Herbert had the contractual right to impose an overdraft fee, consistent with its deposit account agreement. The exercise of that right—dependent on the objective fact of insufficient funds—cannot arise to a violation of the breach of good faith and fair dealing as a matter of law. *See Lambert v. Navy Federal Credit Union*, 2019 WL 3843064, *5 (E.D. Va. Aug. 14, 2019) (slip copy) (The "covenant of good faith and fair dealing claim must be dismissed because Navy Federal honestly exercised its contractual right to charge Plaintiff a nonsufficient fund fee for her insurer's second request for payment.").

## **CONCLUSION**

This case does not meet the minimum requirement for proceeding with a class action in this Court. The aggregate claims of the putative class do not support jurisdiction. And even if it did, CAFA mandates that the Court decline to exercise that jurisdiction for this Virginia centric dispute. Moreover, the Complaint fails to plead facts that state a plausible claim on behalf of the putative class because the agreement attached to the Complaint expressly authorizes an overdraft fee if an item is presented for payment and the account lacks sufficient funds. Randall's argument that the Court should instead look solely at the account balance when a transaction is authorized is not supported by the agreement and should be rejected. The case should be dismissed.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: May 1, 2020 | /s/ Michael W. Robinson |

Michael W. Robinson (VSB No. 26522)
Danielle Foley (admitted *pro hac vice*)
Carly Celestino (VSB No. 94700)
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
Tel: (703) 760-1988
Fax: (703) 821-8949
mwrobinson@venable.com
drfoley@venable.com
cmcelestino@venable.com

Martin J.A. Yeager (VSB No. 38303)
LAND CARROLL & BLAIR, P.C.
524 King Street
Alexandria, VA 22314
Tel: (703) 836-1000
Fax: (703) 549-3335
myeager@landcarroll.com

*Counsel for Defendant*
*Burke & Herbert Bank & Trust Company*

**CERTFICATE OF SERVICE**

  I HEREBY CERTIFY that on this first day of May, 2020, I will electronically file the foregoing Memorandum in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will issue an electronic notification of filing to the following:

>Bernard J. DiMuro, Esquire
>VSB No. 18784
>DIMUROGINSBURG, P.C.
>1101 King Street, Suite 610
>Alexandria, VA 22314
>Tel: (703) 684-4333
>Fax: (703) 548-3181
>Email: bdimuro@dimuro.com
>   jgenti@dimuro.com
>
>Jeffrey Kaliel, Esquire (*pro hac vice*)
>Sophia Gold, Esquire (*pro hac vice*)
>KALIEL, PLLC
>1875 Connecticut Avenue, N.W., 10th Floor
>Washington, DC 20009
>(202) 350-4783
>jkaliel@kalielpllc.com
>sgold@kalielpllc.com
>
>*Counsel for Plaintiff*

>/s/ Michael W. Robinson
>Michael W. Robinson (VSB No. 26522)
>Danielle Foley (admitted *pro hac vice*)
>Carly Celestino (VSB No. 94700)
>VENABLE LLP
>8010 Towers Crescent Drive, Suite 300
>Tysons, VA 22182
>Tel: (703) 760-1988
>Fax: (703) 821-8949
>mwrobinson@venable.com
>drfoley@venable.com
>cmcelestino@venable.com

48971022